Clews & Company *vs.* The First Mortgage Bondholders, etc.

McCay, Judge.

We are not sure that we may not be going too far in granting a new trial in this case. The diligence of the defendant is not very apparent, but the evidence to sustain the finding is so slight that it seems to us, on the whole, that the principles of justice require a new trial. If the defendant tells the truth in his affidavit, it is probably true that he is not chargeable with negligence. The indictment does not set forth the details of the transaction, and it may be that he did not know what particular transaction might be proven. It may be that he had no occasion to call to mind the presence of the witness until he heard the other witness testify in reference to which transaction he was accused. The indictment is general and specifies no particular transaction. We therefore grant a new trial, though we do so with some hesitation, largely because, under the evidence, we think the verdict but just sustainable.

Judgment reversed.

---

Henry Clews & Company, plaintiffs in error, *vs.* The First Mortgage Bondholders of the Brunswick and Albany Railroad Company, defendants in error.

Where a railroad company made a deed of trust to secure the state on its indorsement of the bonds of said company, and the state repudiated the indorsement as illegal, and the bondholders purchasing the bonds on the faith of the indorsement were subrogated to the rights the state would have had under the deed of trust:

*Held*, that only such bonds as had been indorsed by the state officials, ought to be so subrogated, and that bonds of the company not indorsed, but issued to the treasurer of the company as collateral security for advances by him, were not within the equity which allowed the subrogation.

Equity. Subrogation. Bonds. Before Judge Hill. Glynn Superior Court. May Adjourned Term, 1874.

The Brunswick and Albany Railroad Company, on October 1st, 1869, executed a deed conveying to the treasurer of the state of Georgia all its property, in trust to secure said state from liability on certain bonds of said road which it had indorsed in accordance with the provisions of an act of the general assembly. For various reasons the state, by solemn act, subsequently refused to recognize this indorsement as legal. The holders of the bonds thus indorsed, by decree of a court of equity, were subrogated to the rights of the state under the aforesaid deed of trust, and the property sold thereunder. In the distribution of the fund, two hundred bonds, similar in every respect to those named, except that they wanted the indorsement of the state, were presented by Clews & Company for participation. The act authorizing the issue of these bonds, provided that they should be issued on each twenty miles at the rate of $15,000 00 per mile, as it was completed, whilst the bonds held by Clews & Company were issued on road not even graded. They had been placed in the hands of Henry Clews, treasurer of the company, as collateral security for advances made to the road. A sufficient number of miles of the road had not yet been completed to authorize their indorsement under the provisions of the act of the general assembly. It was objected that these bonds were not covered by the deed of trust, and that therefore they did not come within the equity which subrogated the holders of the indorsed bonds to the rights of the state thereunder.

This position was sustained by the chancellor, and Clews & Company excepted.

O. A. LOCHRANE, for plaintiffs in error.

McLAWS & GANAHL; A. O. BACON, for defendants.

McCAY, Judge.

The whole equity of the bondholders to be subrogated to the security given by the road to the state as the indorser of the bonds, depends upon the fact that they became the pur-

chasers of the bonds upon the faith of the *state's indorsement.* We do not go into the question of the right, even of *these* bondholders, to be so subrogated—that has been decided· by the court below without appeal, and, for the purposes of this case, is admitted. We can only say that·there seems to be equity in it. The bondholders may fairly be presumed to have looked behind the indorsement, and to have advanced their money in view of the fact that the state, the apparent indorser, was secured by the mortgage. At any rate, that is the equity upon which the decree is based—the fact that the state seemed to be the indorser—that they advanced their money on the faith of the indorsement, secured as it was by the mortgage. Nothing of that kind can be said in favor of Clews, the holder of the other bonds. He was not in any way deceived. He knew there was no indorsement of his bonds. He trusted nothing to the indorsement, and, therefore, nothing to the mortgage given to secure it, and he does not in any fair sense come within the equity on which the decree is based. Besides, as an officer of the company, he is charged with notice that his bonds were issued directly in the teeth of the charter, upon a part of the road not even graded, when, by the terms of the charter, the bonds were only to be issued on each section of twenty miles as it was completed. We think Judge Hill was right. There is no view of the case that brings these bonds, hypothecated to Clews, within the equity of the decree.

Judgment affirmed.